**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | | |
|---|---|---|
| ZANA KHADIJAH JOHNSON, | * | CIVIL NO. 4:14-cv-00323-REL-SBJ |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | **REPORT AND RECOMMENDATION** |
| | * | **ON PENDING MOTIONS FOR** |
| MARK ANDERSON, | * | **SUMMARY JUDGMENT** |
| | * | |
| Defendant. | * | |
| | * | |

## I. INTRODUCTION

Plaintiff Zana Khadijah Johnson is an inmate at the Iowa Correctional Institution for Women in Mitchellville, Iowa. She filed this action pro se under 42 U.S.C. § 1983 on August 18, 2014. (*See* Complaint (Doc. No. 1).) She alleges that Correctional Officer Mark Anderson used excessive force during an altercation on January 1, 2014. (*Id.*) Officer Anderson filed a Motion for Summary Judgment (Doc. No. 17) on January 26, 2015, asserting he is entitled to judgment as a matter of law. On March 2, 2015, Johnson filed a Motion for Summary Judgment (Doc. No. 26) asserting she is entitled to judgment as a matter of law.

The case was subsequently referred to this magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) for further proceedings, including further review of the record and the pleadings, an evidentiary hearing, if necessary, hearing any oral arguments, and a submission of a report and recommendation regarding disposition of the case to United States Senior Judge Ronald E. Longstaff. (Order (Doc. No. 30).) This report is hereby submitted pursuant to that order and, for the following reasons, it is recommended that both motions be denied.

## II. PROCEDURAL HISTORY & BACKGROUND

Zana Johnson filed a Complaint (Doc. No. 1) pro se on August 18, 2014, against the Iowa Correctional Institution for Women and Correctional Officer Mark Anderson. In a handwritten statement, she describes her claim as follows:

> On Jan 1st, 2014 at around 10:40ish I got into a hands on altercation with c/o Mark Anderson he came into my room without any other staff with him. He began to manhandle me and grabbing me using force. I yelled for him to stop and to let me go he then started pulling my hair and said put your hands behind your back. Meanwhile another Inmate (Kayla Carney) yelled "stop doing that to her you hurting her" he then stated "he Don't Care" he then tried to throw me to the ground he then put his arm around my neck where my backside is on his front area he had me lifted on my tippy toes choking me. Another Inmate Tori Roach yelled "Anderson she can't breath and you're choking her." He then again stated "He don't care." Then he kicked his legs into mine so I would fall. So he made me fall I then hit my left arm on a trunk. He then layed his whole body over mine. The other c/o's then came into the room. I then went to the hole. Where staff and nurses failed to take pictures when I was asking for 5 days.

(*Id.* § V, Statement of Claim.) Johnson requests "monetary compensation for a permanent scar" on her arm and "money they took from me for Mark Anderson glasses." (*Id.* § VI.)

In an Initial Review Order (Doc. No. 4) entered on August 19, 2014, the court dismissed the Institution as a named defendant but allowed Johnson's claims to proceed against Officer Anderson. In an Answer (Doc. No. 6) filed on September 24, 2014, Anderson admits there was an altercation with Johnson but denies the claims asserted against him. (*Id.* ¶ 5.) He contends he acted in good faith towards Johnson and did not violate her constitutional rights. (*Id.* ¶ 9.)

Johnson filed an Application for Appointment of Counsel (Doc. No. 9) on September 30, 2014, which was denied by the court without prejudice to renew upon a significant change in circumstances. Johnson later filed Request for Interrogatories (Doc. No. 14) to which Officer Anderson was ordered to respond. (*See* Text Order (Doc. No. 15).)[1] Anderson filed his responses

---

[1] Plaintiff was repeatedly informed that, pursuant to Local Rule 5.1, discovery requests must not be filed with the Clerk of Court but, in the interest of justice, the requests were not stricken from the record in light of plaintiff's pro se status as an inmate. (*See* Order (Doc. No. 24).)

(Doc. No. 16) to the interrogatories.

Officer Anderson filed his Motion for Summary Judgment (Doc. No. 17) on January 26, 2015, with a supporting Brief (Doc. No. 17-1), Statement of Undisputed Material Facts (Doc. 17-2) and Appendix (Doc. No. 17-3). The factual basis for the motion is primarily supported by affidavits from Anderson and Correctional Officer Irma Osmancevic. (*See* Def.'s App. pp. 6-11.) Anderson contends the affidavits show he did not use excessive force against Johnson and any force used was in self-defense. (Def.'s Brief p. 2.) Anderson further asserts that he "may be entitled to qualified immunity." (*Id.*)

On January 30, 2015, Johnson filed a second Application for Appointment of Counsel (Doc. No. 19) and a request for production of certain materials including reports, statements, photographs and video related to the incident (Doc. No. 20). Johnson was again denied appointment of counsel, without prejudice to renew, and granted until March 20, 2015, to file a response to Officer Anderson's summary judgment motion. (Ruling on Motion to Appoint Counsel (Doc. No. 21).) Anderson was ordered to respond to the discovery requests and to allow Johnson to view any video of the incident. (Text Order (Doc. No. 22).)

Johnson filed another Request for Interrogatories (Doc. No. 23) on February 10, 2015, and asked the court to order witnesses to write statements. The court directed Officer Anderson to respond to the discovery requests but denied the relief sought in regard to obtaining witness' statements. (Order (Doc. No. 24).) Anderson's discovery responses (Doc. No. 25) were filed on February 18, 2015.

On March 2, 2015, Johnson filed her Motion for Summary Judgment (Doc. No. 26) with a supporting Brief (Doc. No. 26-1). The materials contain a fairly lengthy, handwritten statement by Johnson describing the incident. (*See* Doc. No. 26-1 pp. 5-9.) She also submitted written statements from inmates Tori Roach (Doc. No. 28) and Kayla Carney (Doc. No. 29) who witnessed

portions of the incident. Johnson asserts that Officer Anderson "choked, pulled my hair and took me to the ground during the incident causing pain and injury." (Pl.'s Brief p. 1.) She argues that her statement plus those of inmates Roach and Carney "show that the defendant did use excessive force against [her] on January 1, 2014 in violation of [her] Eighth Amendment rights and that the force was not any shape or form used in self-defense." (*Id.*)

On March 23, 2015, Officer Anderson filed a pleading entitled "Reply to Plaintiff's Resistance to Motion for Summary Judgment" (Doc. No. 33). He first "asks the Court to treat Plaintiff's Motion as a Resistance to Defendant's Motion for Summary Judgment." (*Id.* pp. 1-2.) He then argues that the inmate statements relied on by Johnson constitute inadmissible hearsay and are insufficient to resist his motion for summary judgment. (*Id.* p. 2.) Anderson further argues that Johnson "offers nothing beyond self-serving and conclusory statements that rehash the allegations" in the Complaint and are also insufficient to overcome his motion. (*Id.*)

Based on the parties' written submissions, this magistrate judge determined that oral arguments on the pending summary judgment motions were not necessary.

### III. STANDARDS FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(moving party has initial responsibility of demonstrating absence of genuine issue of material fact). "If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011)(en banc)(quoting *Celotex Corp.*, 477 U.S. at 324). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At this stage, the court's function is not to determine credibility, weigh the evidence or determine the truth of the matter. *Id.* at 249, 255. Instead, the court views the record in the light most favorable to the nonmoving party and determines whether there is a genuine issue for trial. *Id.*; *see also Torgerson*, 643 F.3d at 1042.

## IV. FACTUAL RECORD

The evidentiary record submitted by the parties consists primarily of the affidavits of two correctional officers, defendant Anderson and Irma Osmancevic, and the written statements of three inmates, plaintiff Johnson, Tori Roach and Kayla Carney, who were all present to some extent during the incident on January 1, 2014. Their narratives of the events are similar in many aspects but diverge on certain material points.

Officer Anderson describes the incident as follows:

On January 1, 2014, I was on Unit 4. Inmate Johnson had previously been placed on room confinement. However, she repeatedly broke her sanctions. Over the course of the day, I gave her at least five (5) warnings about her room confinement. Nevertheless, she persisted in breaking her sanctions. After speaking with Captain Southwick, we determined that Johnson would be taken to administrative segregation in unit 6B following the count as a consequence of her non-compliance with her sanctions. Following the count, I went Johnson's room with C/O Irma Osmancevic. I instructed Johnson to come out of the room as we were going to take her to 6B. Johnson was brushing her teeth, and informed us she would not come out until she was done. I informed her that she should rinse her mouth out and come out of the room. I had to repeat myself several times. Johnson did go into the bathroom to rinse her mouth, but refused to come out of the room, stating "Why am I going to 6b?" She then screamed F@#! you, I'm not going. You will have to come in and get me." Johnson proceeded to face a bunk, placing her hands on the top mattress. I entered the room, and attempted to put my hand on her arm. Johnson threw a punch at me and missed. She then attempted to kick me in the groin, but again missed. I grabbed Johnson from behind, placing my arm over her right shoulder. This held down her right arm, leaving her left arm free. Johnson continued to try and punch with her free arm. At this point, we fell to the ground. I placed my hand on Johnson's head as we fell to protect her head. As we fell, I cut my left arm on a bed in the room. At this time, Osmancevic called for backup. I continued to hold Johnson on the ground, and she continued resisting. Four or five back up officers arrived. Johnson continued resisting as the officers placed her in restraints. The other officers escorted Johnson to 6B. I went to the nurse to have my cut treated.

(Anderson Aff. ¶¶ 3-18.)    Officer Osmancevic provides the following, similar account of the

events:

On January 1, 2014, C/O Mark Anderson and I were instructed to remove Johnson from her unit and take her to segregation due to her continuous disruptive behavior and breaking her sanctions. In cases like this, the offender is usually asked to step out of the room and cuff up. In most cases they comply. This incident was different due to the fact that Johnson disobeyed our orders to come out and we were unsure where exactly she was. I entered one half of the room while Anderson entered the other. My intent was to go in the room and gain her compliance to come out and cuff up for us, but while I was looking for her, I heard her struggling with CO Anderson. Upon returning to Johnson's room, I witnessed Anderson struggling with Johnson. He had his arm over her shoulder and was attempting to restrain. Anderson said to me, "She's refusing, call for backup." At this point, I called for backup. Johnson's left arm was free, and she was swinging it at Anderson. I attempted to reach out my hand to her, but she pushed it away, and continued screaming profanities. At this point, Anderson and Johnson fell to the ground. Anderson was on top of her, with his arm over her right shoulder. An inmate yelled that Anderson was choking Johnson. I changed positions and verified Anderson was not choking her. I reassured the other inmates Johnson was not being choked, instructed the inmates to back away and informed them that Johnson was not being

choked. Johnson continued resisting, screaming "Get the f#@1 off me, don't touch me." Backup arrived and cleared the room. One officer carried a handheld camcorder, and recorded the incident from the point that backup arrived. While the video is blurry, the audio is intact. . . . We secured Johnson's hands and feet. Johnson continued to refuse to comply as we took her to 6B.

(Osmancevic Aff. ¶¶ 3-12.)   A copy of the video was provided to the court. (Def.'s App. Ex. No. 4).

Johnson presents a different version of the altercation consistent with the claims set forth in her Complaint.   She first describes events leading up to the altercation, then states:

After counters passed this dorm for headcount I started to undress and brush my teeth. As I was doing this I heard this C/O yell for me to come out to the hall. In a rush, w/ a mouthful of toothpaste I yelled to this C/O "hold on can I rinse out my mouth," and began putting back on my clothes but this C/O was already repeating, "Johnson come out to the hall." I said, "I'm coming, I heard you the 1st time." As I was coming out of the bathroom this C/O was already entering the dorm. He had no circulator; no female officer. (Otherwise wouldn't she had just entered to come get me); and he didn't even have any cuffs in his hands, this again breaking policy. So when he grabbed and yanked my arm I felt fear and horror and I yanked back. Memories of being sexually abused flashed in my head "Don't grab me like I'm your rag doll", I cried. He grabbed my arm a 2nd time and pushed me backwards against a heater and a window as I was yelling that he could stop that I can walk He then put me into a headlock and tried to slam me to the ground. I resisted to go down. So he started to pull my hair. I/M Carney yelled "you're not suppose to do that, you're hurting her." "I don't care," was his cruel response to me. I yelled, "are you really fucking pulling my hair right now you got me fucked up. Let go of me, I didn't do shit!" He released my hair but held the headlock and again attempted to throw me to the ground. What he did next caused me painful terror. He put his arm around my neck putting his backside out and around me so that I ended up w/ my back into his front area and he lifted me up onto my tippy toes. I couldn't breathe and I tried to scream for help but the words just wouldn't come out. I/M Emily Hayes yelled at him, "Why are you doing this, you're going to hurt her." He replied, "She don't want to listen, so I don't care." I/M Tori Roach yelled, "Anderson she can't breathe, she has asthma, you're choking her!" Again he stated that he did not care but he did let me down so that I was no longer on my tippy toes. Then he kicked his knee into the back of my leg and let me go causing me to fall and into the corner of a trunk w/ my left shoulder, where I know where a scar. For reasons beyond my understanding he then laid his whole body on top of mine and all my roommates, who are in this dorm, labeled as victim potential by this prison administration, were starting to plea and yell at this C/O. I could hear "how can you do that, you don't have to do her like that."

(Doc. No. 26-1 pp. 6-7.)

Inmate Tori Lynn Roach provided the following account of the incident:

> Zana Johnson was in the adjoining bathroom of rooms #12 & #13 brushing her teeth when C/O Anderson asked her to come to the hall way. She asked him why? Said she was brushing her teeth. C/O Anderson was very impatient and said "NOW" in a raised voice. With my knee it takes a while to get off my bed and I had to use the bathroom, in the time it took me to get down I heard Zana getting into her trunk the a loud crash which I assume was Anderson trying to detain her. When I got off my bed and got to the hallway, everyone in room #13 was screaming and when I made it to the bathroom, Anderson had Zana on the floor with his left arm wrapped completely around her neck. I have been married to Zana's cousin for 5 years so I know she has issues breathing. Her face was turning purple and I told C/O Osmancevic that she couldn't breathe and she told Anderson.

(Roach Statement (Doc. No. 28) p. 2.)   Finally, inmate Kayla Carney describes the events as follows:

> On 1-1-14 at approximately 10 pm C/O Anderson cleared count in unit 4. As he did he also said everyone was to stay in their rooms. I as well as Zana Johnson lived in the dorm room #13. Everyone was on their beds besides Johnson who was brushing her teeth in the bathroom. Anderson then said Johnson, I need you to come out here, she asked for what, he just repeated himself again, by this time she was standing by her bed, while he was at the doorway, by this time he started to yell and became upset because she was not listening. I was as well as all our room-mates were starting to become uneasy because of his demeanor toward Johnson. As she asked again why, he then came into the room full force, yelling I said come here, he put his harms around her throat and grabbed her hair in an attempt to get her out of the room. She started screaming for help and was upset due to his aggression. While he was doing this our entire room felt unsafe with what he was doing and it should be noted that there was no other C/O around or in the room. C/O Osmancevic was only in the hallway trying to keep others in there room, which states this is true in my ticket. I started to yell for him to stop because he was causing me to feel unsafe due to past issues. By the time I stood up and was at our window, Anderson had forcefully knocked her to the ground, between beds and the trunk, where then other C/Os had to come to attempt to gain control of the situation Anderson had caused. I feel as though Zana Johnson did nothing wrong to cause Anderson to indirectly do what he did. I feel as though the only thing Johnson is guilty of is not following directions, beyond that I feel if Anderson was being professional and more willing to do his job by waiting for other officers to assist, all of this could have been prevented. She is no where to be found at guilt for him being to forceful.

(Carney Statement (Doc. No. 29) pp. 1-2.)

After the incident, Officer Anderson was seen in the Institution's Health Services for treatment.   According to a Nurse Encounter report (Doc. No. 17-3), Anderson had "a small cut

to his left posterior upper arm that resulted from his arm brushing up against a bed in the room during the take down process." (*Id.*) The wound had some minimal bleeding and was cleansed, treated with antibiotic ointment and covered with a band-aid. (*Id.*)

According to Johnson, she requested medical treatment after the altercation but the Institution's staff "would not see to [her] injuries." (Doc. No. 26-1 p. 7.) She describes her injuries as follows: "When I awoke the next morning my left shoulder was swollen & crusted w/ blood & the left side of my face was bruised & swollen. There were marks on my neck from when C/O Anderson choked me & a bald spot on my head from when he pulled my hair." (*Id.* p. 8.) Johnson also claims to have suffered "emotional damage" from the incident and requests counseling or therapy. (*Id.* pp. 3, 9.)

A Disciplinary Notice (Doc. No. 17-3) dated January 2, 2014, was written by Officer Anderson against Johnson for violation of several rules including criminal conduct, fighting, threats/intimidation, damage to property, assault, disobeying a lawful order/direction, verbal abuse, obstructive/disruptive conduct, false statements, and attempt or complicity. (*Id.* p. 1.) Within the Notice, Officer Anderson reported that when he arrived home after the altercation he realized prescription glasses in his pocket were broken, his "uniform shirt was torn and [his] pants had a cut in them." (*Id.*) Both the shirt and pants were "beyond repair" and needed to be replaced according to Anderson. (*Id.*)

A hearing was held before an Administrative Law Judge ("ALJ") on January 14, 2014. As set forth in the ALJ's written Hearing Decision (Doc. No. 17-3), Johnson was found guilty of violating rules for assault by attempt, damage to property, disobeying a lawful order/direction, verbal abuse and obstructive/disruptive conduct. (*Id.* p. 1.) The ALJ indicated that the evidence relied upon for the decision was the "[d]isciplinary notice dated 1/02/2014 written by C/O Anderson; witness statements, Incident Report and statements by Offender." (*Id.* p. 2.)

The ALJ reported Johnson's statements as follows:

> Offender JOHNSON stated Officer Anderson was nitpicking at her and she told him this and he told her to stop or she would go to 6B; she was on a non-verbal sanction and the only time she spoke it was when an officer spoke to her; the officer asked her about a biohazard bag and she told him it was hers; her roommates were talking about the officer and he thought it was her and told her she was going to 6B and she heard him call about getting her out; she was getting ready for her bath and was brushing her teeth when the officer came to get her; she did not say "take me to 6B" and if she had said that, then why would she have asked why they were taking her; if she had tried to hit the officer, she would have done it; the officer was trying to get her to argue with him all day; She did not see the other officer, only Officer Anderson was in the room; Officer Anderson came toward her and was trying to man-handle her and when he tried to grab her, she threw her arms up and told him not to man-handle her; the officer then grabbed her hair and she laughed and asked him if he was really grabbing her hair; the officer then tried to slam her to the floor and grabbed her by the neck so she couldn't breathe; She fell to the ground when the officer was choking her and the other officers didn't come in until that point and she told the officers she "wasn't fucking doing anything". Offender JOHNSON stated she was pulling her arms away and another officer put his knee in her face: she was upset and the next day she had swelling on her face and bruises and asked to see the nurse and they didn't get the nurse; she did resist the officer but didn't assault him; she doesn't know how the officer wouldn't have noticed his glasses until later.

(*Id.* p. 1.)

Based on the record submitted, it does not appear the Incident Report referred to in the Hearing Decision was provided to the court. In addition, it is not clear as to whether the "witness statements" referred to and considered by the ALJ included the officers' affidavits and inmates' statements quoted above. Officer Anderson's affidavit is dated January 6, 2014, the day before the hearing. But Officer Osmancevic's affidavit is dated January 23, 2015, a couple of days before Anderson's summary judgment motion was filed. The statements of inmates Roach and Carney are dated January 7, 2014, the day of the ALJ's hearing, and are handwritten on "Witness Statement" forms, signed by the respective inmate and also appear to be signed by an unidentified staff member from the Institution. (*See* Roach Statement (Doc. No. 28) pp. 1-2; Carney Statement (Doc. No. 29) pp. 1-2.)

## V. ANALYSIS OF MOTIONS FOR SUMMARY JUDGMENT

The written pleadings submitted to the court on the summary judgment motions fail to comply with Local Rule 56. Neither party technically filed a resistance to the other party's motion. This magistrate judge initially contemplated directing the parties to fully comply with the requirements of Local Rule 56 but, after carefully reviewing the parties' submissions, believes such a directive would unnecessarily delay the proceedings while reaching the same conclusion: there are genuinely disputed material facts which must be fully presented and considered at an evidentiary hearing to determine whether Correctional Officer Mark Anderson used excessive force in violation of Zana Johnson's constitutional rights.

### A. Excessive Force in Violation of Eighth Amendment

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To determine whether a correctional officer used excessive force against an inmate in violation of the Eighth Amendment, the "core judicial inquiry" is whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 6-7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *see also*, *e.g.*, *Burns v. Eaton*, 752 F.3d 1136, 1139 (8th Cir. 2014)(quoting *Hudson,* 503 U.S. at 7); *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013)(same).

> This is a different and less protective test than the Fourth Amendment standard that applies to "a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person." *Graham v. Connor,* 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The Fourth Amendment standard is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation," whereas "the subjective motivations of the individual officers are of central importance in deciding whether force [was] used" maliciously and sadistically to cause harm in violation of the Eighth Amendment. *Id.* at 397–98, 109 S.Ct. 1865.

*Burns*, 752 F.3d at 1139.

An officer's use of excessive physical force against an inmate "may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Wilkins v. Gaddy*, 599 U.S. 34, 34, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010)(per curiam)(quoting *Hudson,* 503 U.S. at 4.) As explained by the Supreme Court of the United States,

> "When prison officials maliciously and sadistically use force to cause harm," . . . "contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." . . .

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." The extent of injury may also provide some indication of the amount of force applied. As we stated in *Hudson,* not "every malevolent touch by a prison guard gives rise to a federal cause of action." "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim.

> Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.

*Id.* at 37-38 (internal citations omitted).

Accordingly, "'the extent of any resulting injury, while material to the question of damages and informative as to the likely degree of force applied, is not in and of itself a threshold requirement for proving this type of Eighth Amendment claim.'" *Santiago*, 707 F.3d at 990 (quoting *Williams v. Jackson,* 600 F.3d 1007, 1012 (8th Cir. 2010)(citing *Wilkins,* 559 U.S. at 37)). Thus, "[w]here the force applied is excessive, . . . a constitutional claim may survive summary dismissal even if the resulting injury is *de minimus*." *Williams,* 600 F.3d at 1012 (citing *Wilkins,* 559 U.S. at 40); *see also Story v. Norwood*, 659 F.3d 680, 687 (8th Cir. 2011)("excessive force claims do not necessarily fail because the injury may be *de minimus*").

Here, Officer Anderson contends his actions were taken in a good faith effort "to take an uncooperative inmate to administrative segregation." (Def.'s Brief p. 7.) He asserts that Johnson "was physically resisting and seeking to assault [him]" and "[t]he force used was not excessive, but simply just enough to secure Johnson until backup arrived." (*Id.*) Anderson urges the court to dismiss Johnson's claim because he "employed only that force necessary to protect himself and secure the restraint of an uncooperative inmate." (*Id.*)

It is well-established that "'officers may reasonably use force in a good-faith effort to maintain or restore discipline but may not use it maliciously or sadistically to cause harm.'" *Story*, 659 F.3d at 686 (quoting *Walker v. Bowersox,* 526 F.3d 1186, 1188 (8th Cir. 2008)(per curiam)); *see also Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006)(citing *Hudson,* 503 U.S. at 7); *Treats v. Morgan,* 308 F.3d 868, 872 (8th Cir. 2002)(same). "Whether the force used was reasonable is 'judged from the perspective of a reasonable officer on the scene' and in light of the particular circumstances. *Story*, 659 F.3d at 686 (quoting *Graham v. Connor,* 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). "In determining whether the force was reasonable and used in good faith, the court may consider several factors, including 'the need for applying force, the relationship between that need and the amount of force utilized, the threat the responsible officials reasonably perceived, any efforts used to diminish the severity of a forceful response, and the extent of the injury inflicted.'" *Story*, 659 F.3d at 686 (quoting *Walker,* 526 F.3d at 1188 (citing *Hudson,* 503 U.S. at 7)); *see also Johnson*, 453 F.3d at 1112 (quoting *Treats,* 308 F.3d at 872 (citing *Hudson,* 503 U.S. at 7))(setting forth same factors).

Based on the record currently before this court, there are genuine issues of material fact concerning whether the force used against Johnson was objectively reasonable in light of the circumstances confronting Officer Anderson. There are factual disputes as to the events leading up to the altercation and whether physical force was necessary to move Johnson to administrative

segregation.   There are also factual disputes as to the actions taken by Johnson during the altercation and whether she was aggressive and posed a reasonably perceived threat to Officer Anderson or others.   Additional factual disputes exist as to the actions taken by Officer Anderson and whether he attempted to diminish the severity of his physical response in the situation.   There is also a genuine question as to whether Johnson was injured and, if so, the extent of any injuries suffered from the altercation.

When viewed in a light most favorable to Johnson, the evidence tends to show she did not act in an aggressive manner but Officer Anderson "manhandled" her, "grabbed and yanked" her arm, put her into a headlock, pulled her hair, choked her, attempted to slam her to the floor, and eventually knocked her down to the ground.   If those facts are accepted as true, along with the alleged comments made by Officer Anderson during the altercation, it is reasonable to conclude that the force applied by Anderson was done maliciously and sadistically to cause harm to Johnson. On the other hand, when viewed in a light most favorable to Officer Anderson, the evidence tends to show Johnson acted in a disruptive, combative manner by disobeying directions and attempting to punch and kick Anderson who responded by using only the force necessary to restrain Johnson and move her to administrative segregation, including protecting Johnson's head as they "fell to the ground."   If those facts are accepted as true, it is reasonable to conclude that the force applied by Officer Anderson was reasonably done in a good-faith effort to maintain discipline in the Institution.   As recognized by the Eighth Circuit, "[w]hether a situation justifies the use of force to maintain or restore discipline is a fact specific issue that 'turns on the circumstances of the individual case or the particular 'prison setting.''" *Johnson*, 453 F.3d at 1112 (quoting *Treats,* 308 F.3d at 872 (quoting *Jones v. Shields,* 207 F.3d 491, 495 (8th Cir. 2000))).   Under the circumstances presented in the current evidentiary record, a rational trier of fact could find in favor of either party.   Thus, neither Officer Anderson nor Zana Johnson are entitled to judgment as a

matter of law.

Officer Anderson's assertion that the court "must disregard" the written statements of Roach and Carney is unpersuasive. (*See* Def.'s Reply p. 2.)   As citied by Anderson, the Eighth Circuit has held that sole reliance upon inadmissible hearsay is insufficient to defeat a motion for summary judgment. *See, e.g., Novotny v. Tripp County*, 644 F.3d 1173, 1178 (8th Cir. 2011)("statements of fact in [] letters amount to inadmissible hearsay and, as such, are insufficient to defeat summary judgment"); *Mays v. Rhodes*, 255 F.3d 644, 648 (8th Cir. 2001)(mother of deceased inmate failed to provide admissible evidence to avoid summary judgment because unsigned, handwritten account of inmate who allegedly witnessed events and unsworn accounts in grievance forms by other inmates constitute inadmissible hearsay); *Cronquist v. City of Minneapolis,* 237 F.3d 920, 927 (8th Cir. 2001)("reliance on affidavits based on hearsay cannot defeat a motion for summary judgment"); *Duluth News-Tribune v. Mesabi Publ'g Co.,* 84 F.3d 1093, 1098 (8th Cir. 1996)("In evaluating the evidence at the summary judgment stage, we consider only those responses that are supported by admissible evidence.").

But as further explained by the Eighth Circuit, "the standard is not whether the evidence at the summary judgment stage would be admissible at trial - it is whether it *could* be presented at trial in an admissible form." *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012); s*ee also Walker v. Wayne County,* 850 F.2d 433, 434 (8th Cir. 1988)("When ruling on a summary judgment motion, the district court may consider only the portion of the submitted materials that is admissible or usable at trial."; holding district court did not error by relying on inadmissible double hearsay in written report to deny defendants' summary judgment motion because the evidence would be admissible at trial through plaintiffs' personal testimony); *JRT, Inc. v. TCBY Sys., Inc.,* 52 F.3d 734, 737 (8th Cir. 1995)("[A] successful summary judgment defense requires more than argument or re-allegation; [the party] must demonstrate that at trial it may be able to put

on admissible evidence proving its allegations.").

Federal district courts, including the Southern District of Iowa, have applied this standard when considering summary judgment evidentiary records. *See, e.g.*, *Burciaga v. Ravago Americas, LLC*, 56 F.Supp.3d 987, 995 (S.D. Iowa 2014)(overruling evidentiary objections as to authentication of documents in summary judgment context because proper foundation could be established at trial through testimony); *Severe v. O'Reilly Auto. Stores, Inc.*, 2015 WL 1297500 *11 (N.D. Iowa March 23, 2015)(finding plaintiff provided sufficient foundation to show statement objected to as inadmissible hearsay "'could' be admissible at trial"); *Ratliff v. City of Shannon Hills*, 52 F.Supp.3d 904, 910-12 (E.D. Ark. 2014)(denying motion to strike evidence submitted in support of summary judgment motion because it "could be presented at trial in an admissible form"). The standard is based on Rule 56(c)(2) which provides that "[a] party may object that the material cited to support or dispute a fact *cannot be presented* in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2)(emphasis added).

In the opinion of this magistrate judge, the evidentiary material in the summary judgment record which supports Johnson's allegations could be presented at trial in an admissible form. The written statements of Roach and Carney appear to be based on their personal observations of the events of January 1, 2014, to which they could testify, under oath, during the evidentiary hearing. In addition, although it is presently unclear as to whether the statements were submitted and considered by the ALJ, then kept in the course of the Institution's regularly conducted activities, the statements potentially fall within an exception to the exclusion of hearsay. *See* Fed. R. Evid. 801, 802 & 803.

Officer Anderson's assertion that Johnson "offers nothing beyond self-serving and conclusory statements" is also unpersuasive. (*See* Def.'s Reply p. 2.) Contrary to Anderson's suggestion, the written statements of Johnson are detailed, factual accounts of her version of the

events on January 1, 2014, which could be presented at an evidentiary hearing through her sworn, personal testimony. It is noteworthy that evidence of her account is not only set forth in her Complaint and summary judgment materials, but is also contained in the ALJ's written Hearing Decision (Doc. No. 17-3) which was filed by Officer Anderson as part of the summary judgment record. Moreover, support for Johnson's allegation that she was being choked by Anderson is found in Officer Osmancevic's affidavit, also filed by Officer Anderson as part of the record, wherein Osmancevic states: "An inmate yelled that Anderson was choking Johnson." (Osmancevic Aff. ¶ 9.)

In addition, as previously noted, Johnson's statements regarding the altercation match those of Officers Anderson and Osmancevic in many aspects but differ on certain, material points which generate genuine issues for trial. Johnson's statements could be considered no more "self-serving and conclusory" than those of Officers Anderson and Osmancevic. The difference is that the officers' written statements were signed under oath before a notary public. In this magistrate judge's view, it would be unjust to foreclose Johnson, who is proceeding pro se, from presenting her personal account of the incident through sworn testimony at an evidentiary hearing based solely on that distinction, and especially in light of the court's denial of assistance of counsel and in obtaining sworn witness statements.

To ultimately succeed on her claim, Johnson will have to prove not only that the alleged actions of Officer Anderson actually occurred but also that he did so maliciously and sadistically to cause her harm. The final resolution of those factual disputes requires the consideration of the credibility of witnesses and the weighing of the evidence to determine the truth of the matter. Consequently, pursuant to the standards under Rule 56, summary judgment should not be granted in favor of either party.

**B. Qualified Immunity**

Officer Anderson contends he "may be entitled to qualified immunity from damages." (*See* Def.'s Brief pp. 7-9.) "Qualified immunity shields a government official from liability unless his conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Burns*, 752 F.3d at 1139 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "Determining the question of qualified immunity involves the following two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right; and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Santiago*, 707 F.3d at 989; *see also Smith v. Conway County*, 759 F.3d 853, 858 (8th Cir. 2014); *Williams,* 600 F.3d at 1012. Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson v. Callahan,* 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Here, in the opinion of this magistrate judge, both inquiries are answered in favor of Johnson.

As discussed above, the material facts shown by Johnson, and taken in the light most favorable to her, are sufficient to make out a claim for excessive force in violation of the Eighth Amendment. "[W]hen an official's intent is an element of the § 1983 claim, as it is in Eighth Amendment excessive force claims, and if the official has made a properly supported motion for summary judgment based on qualified immunity, the plaintiff 'must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive.'" *Burns*, 752 F.3d at 1139 (quoting *Crawford–El v. Britton,* 523 U.S. 574, 600, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998)). Based on Johnson's evidence that Officer Anderson "manhandled" her, "grabbed and yanked" her arm, put her into a headlock, pulled her hair, choked her, attempted to slam her to the floor, and eventually knocked her down to the ground, along with

the alleged comments made by Anderson during the altercation such as "I don't care", a reasonable factfinder could find Johnson has carried her burden of proving Officer Anderson applied force maliciously and sadistically to cause her harm in violation of her Eighth Amendment rights. Consequently, the first inquiry is satisfied in favor of Johnson.

Turning to the second inquiry, "'[a] right is clearly established if its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Conway County*, 759 F.3d at 858 (quoting *Mitchell v. Shearrer,* 729 F.3d 1070, 1076 (8th Cir. 2013)(quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). The Eighth Circuit recently explained the test:

> In assessing whether a right is clearly established, the Supreme Court has emphasized that we must define the right "in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "[T]he salient question . . . is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged [conduct] was unconstitutional." *Tolan v. Cotton,* ___ U.S. ___, ___, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014) (alterations in original) (citation and internal quotation marks omitted). As such, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Winter v. Adams,* 254 F.3d 758, 766 (8th Cir.2001) (citation omitted); *see also Davis v. Hall,* 375 F.3d 703, 712 (8th Cir.2004) ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."). Therefore, "existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate." *Plumhoff v. Rickard,* ___ U.S. ___, ___, 134 S.Ct. 2012, 2023, 188 L.Ed.2d 1056 (2014) (citation and internal quotation marks omitted).

*Robinson v. Payton*, ___ F.3d ___, 2015 WL 3937653 *3 (8th Cir. June 29, 2015).

Here, existing precedent within the decisions of the Supreme Court and Eighth Circuit had clearly established Johnson's constitutional right to be free from the type of excessive force she alleges occurred on January 1, 2014, at the hands of Officer Anderson. A reasonable correctional officer would understand that the combined actions of grabbing and yanking an arm, pulling hair, choking and slamming or knocking a nonviolent inmate to the ground, as alleged by Johnson, violates the inmate's Eighth Amendment rights. Based on the decisions cited within this Report

and Recommendation, the state of the law at the time provided fair warning to correctional officers that such conduct was unconstitutional. *See, e.g., Conway County*, 759 F.3d at 858 (noting precedent "which recognizes prison officials' constitutional ability to use 'force' . . . in a good faith effort to maintain or restore discipline, but not 'maliciously and sadistically to cause harm' to a nonviolent inmate who is simply slow to comply with a jailer's non-emergency instruction") (citing *Hickey v. Reeder,* 12 F.3d 754 (8th Cir. 1993); *Hudson*, 503 U.S. at 7); *Edwards v. Byrd*, 750 F.3d 728, 732 (8th Cir. 2014)(finding it was clearly established at the time of the incident at issue, October 24, 2010, that jail guards' alleged use of force "for the sole – and impermissible – purpose of inflicting unjustified harm", and not to restore order or discipline, "would violate the Eighth Amendment's proscription of cruel and unusual punishment")(citing *United States v. Miller,* 477 F.3d 644, 647–48 (8th Cir. 2007)(holding that kicking and stomping on inmate "without just cause or reason" would violate Eighth Amendment); *Thompson v. Zimmerman,* 350 F.3d 734, 735 (8th Cir. 2003)(reversing grant of summary judgment based on qualified immunity where guards beat prisoner who was not resisting or causing a disturbance); *Hickey,* 12 F.3d at 759 (holding that use of stun gun for reason other than good-faith effort to maintain or restore order violated Eighth Amendment)).

For those reasons, under the present summary judgment record, Officer Anderson has not shown he is entitled to qualified immunity.

## VI. CONCLUSION & RECOMMENDATION

After reviewing the evidentiary record presently before the court, this magistrate judge concludes that neither party is entitled to judgment as a matter of law. Instead, there are genuine issues of material fact which mandate an evidentiary hearing on the merits of Zana Johnson's claims against Officer Mark Anderson. Accordingly, it is recommended that both Motions for Summary Judgment (Doc. Nos. 17 & 26) be denied and an evidentiary hearing be held before this

magistrate judge for submission of a report and recommendation regarding final disposition of the merits of the case.

Pursuant to Federal Rule of Civil Procedure 72(b)(2), the parties shall have until **August 14, 2015**, to serve and file specific written objections to this magistrate judge's recommendation. A party may respond to another party's objections within 14 days after being served with a copy. (*Id.*)

Dated July 27, 2015.

STEPHEN B. JACKSON, JR.
UNITED STATES MAGISTRATE JUDGE